O

# United States District Court
# Central District of California

| | |
|---|---|
| A. HARRISON BARNES, individually and on behalf of the A. HARRISON BARNES TRUST-2005,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CROWN JEWELS, LLC; KONA CROWN HOLDINGS, LLC; MALIBU INVESTMENT GROUP, LP; 32430 PCH, LLC; REPUBLIC WESTERN INVESTMENTS CO., LLC; MAYER SEPARZADEH; DAVID YORK; ANNETTE SEPARZADEH; DOES 1–50, inclusive,<br><br>　　　　　　Defendants. | Case № 2:14-cv-04098-ODW(MRWx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION [13]** |

## I.  INTRODUCTION

　　This action arises from an apparent real estate transaction gone wrong.  The property is a multi-million dollar home on the California coast in Malibu.  The allegations include fraud and even forgery.  According to Plaintiff A. Harrison Barnes,

the story begins with a high-profile Ponzi scheme, winds its way through broken promises and the recession, and ends with this litigation—which includes a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68.

But before the Court is Defendants' Motion to Compel Arbitration (ECF No. 13), which limits the Court's inquiry to more mundane issues of contract formation. The Court does not reach the merits of the dispute despite attempts by the parties to color the issues. For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Compel Arbitration and **STAYS** this action pending arbitration in accordance with the parties' agreement.[1] (ECF No. 13.)

## II. FACTUAL BACKGROUND

Barnes initiated this action on May 28, 2014. (ECF No. 1.) In the First Amended Complaint ("FAC"), Barnes brings eight claims against Defendants, including fraud and breach of contract. (ECF No. 12.) Barnes' civil RICO claim is the asserted basis for this Court's subject-matter jurisdiction. (FAC ¶ 9.) Rather than answering or otherwise challenging the allegations in the FAC, Defendants filed the present Motion to Compel Arbitration on August 19, 2014. (ECF No. 13.)

Barnes' claims are based on a real estate option agreement he entered into with Defendants for a home and adjoining lot on Pacific Coast Highway in Malibu, California (collectively "the Property"). (FAC ¶ 6.) According to Barnes, Defendants committed fraud by concealing his interest in the property, thwarting his efforts to record their option agreement, and holding onto Barnes' option payments after he was forced to abandon the property. (*Id.* ¶¶ 7–8.)

The parties first entered into a written option agreement ("the Original Agreement") for the Property on September 5, 2007. (*Id.* ¶ 64, Ex. O.) The Original Agreement was executed between Barnes and the owners of the Property—

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Defendants Crown Jewels, LLC ("Crown Jewels"); Kona Crown Holdings, LLC ("Kona"); Malibu Investment Group, LP ("Malibu Investment"); 32430 PCH, LLC ("PCH"); Mayer Separzadeh; and Annette Separzadeh.[2]  (*Id.*)  The Original Agreement incorporated by reference a Residential Lease Agreement, a Home Purchase Agreement, and a Lot Purchase Agreement.  (*Id.* ¶ 65, Ex. O.)  According to Barnes, the terms of the Original Agreement set a purchase price for the Property at $14,750,000.  (*Id.*)  Barnes agreed to pay $4.2 million in four installments as "option consideration," which would then be credited to the purchase price if he exercised the option.  (*Id.* at Ex. O, pp. 309–10.)  Barnes also agreed to pay Defendants $50,000 in monthly lease payments.  (*Id.* ¶ 66, Ex. O, p. 326.)

After the Original Agreement was executed, Barnes alleges that Defendants delayed recording the Original Agreement so that they could secure a mortgage on the Property.  (*Id.* ¶¶ 70–76.)  A mortgage was recorded on the home in December 2007.  (*Id.* ¶ 76.)   Barnes alleges that he spoke with York frequently about assuming the mortgage, so that he could lower his payments and make them more manageable.  (*Id.* ¶ 77.)  But, according to Barnes, York would not allow him to assume the mortgage until he could "accumulate more equity," and encouraged Barnes to increase his payments to Defendants.  (*Id.* ¶ 80.)

On April 11, 2009, Barnes signed a document titled "First Amendment of Option Agreement" ("the Amended Agreement").  (*Id.* ¶ 83, Ex. U.)  According to Barnes, the Amended Agreement increased his monthly payments from $50,000 a month to $100,000 a month.  (*Id.* ¶ 81.)  Barnes alleges that he signed the Amended Agreement because he had already invested significant money in the Property—more than $3 million—and was concerned about losing his investment if he did not agree to increase the payments.  (*See id.* ¶¶ 77–86.)  However, Barnes alleges in a footnote in

/ / /

---

[2] Defendant David York signed the Original Agreement as manager of Crown Jewels, Kona, and PCH.  (York Decl. ¶ 4.)  Barnes alleges that York presently owns the Property through Crown Jewels and Defendant Republic Western Investments Co., LLC.  (FAC ¶ 14.)

the FAC that the Amended Agreement violates California law with respect to its arbitration provisions and is "void *ab initio* because of fraud." (*Id.* ¶ 83 n.2.)

The Amended Agreement is attached to the FAC as Exhibit U. Relevant to this Motion is paragraph 5 of the Amended Agreement, which reads as follows:

> **5. Alternative Dispute Resolution.** The Reference Proceeding referred to in Paragraph 18 of the [Original] Agreement, and Paragraph 15 in the Purchase Agreements, is hereby replaced by the Arbitration Provisions that are attached to this Amendment as Exhibit "C".

(*Id.* at Ex. U, p. 488.) Exhibit C of the Amended Agreement is clearly titled "Arbitration Provisions" and the entire document is in bold-type capital letters.[3] (*Id.* at Ex. U, pp. 500–01.) In addition to the signatures at the end of the Amended Agreement, the parties' initials—including Barnes' initials—can be found on the last page of the Arbitration Provisions. (*Id.* at Ex. U, pp. 501–03.) While Barnes generally alleges fraud with respect to the Amended Agreement, the FAC is silent as to the authenticity of Barnes' initials on the Arbitration Provisions.

Barnes was represented by counsel—attorney Bruce Fraser of the law firm Sidley Austin LLP—in negotiating the Original Agreement and Amended Agreement. (FAC ¶ 119; Barnes Decl. ¶ 7.) Barnes himself is also a licensed attorney in California as well as the owner of several businesses. (Barnes Decl. ¶ 7.)

After executing the Amended Agremeent, Barnes alleges that Defendants failed to live up to their spoken promise that Barnes could assume the mortgage on the Property. (*See* FAC ¶¶ 93–97.) The relationship between the parties subsequently deteriorated and Barnes alleges that he was forced to abandon the Property after making more than $8 million in payments over a four-year period. (*See id.* ¶ 138.)

/ / /

/ / /

---

[3] The Court refers to Exhibit C of the Amended Agreement as the Arbitration Provisions for the remainder of this Order.

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") is meant "to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Section 2 of the FAA creates a policy favoring enforcement, stating that arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2; *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Under the FAA, a party to such an agreement may petition an appropriate federal district court to compel arbitration. 9 U.S.C. § 4. Courts are then required to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement." *Id.*

In determining whether parties must arbitrate their dispute, a court may not review the merits of the dispute. *Cox*, 533 F.3d at 1119. Courts are instead limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue."[4] *Id.* (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

### IV. DISCUSSION

Defendants point to the Amended Agreement and its attached Arbitration Provisions to support their Motion to Compel Arbitration. Defendants argue that Barnes agreed to arbitrate his claims in the Amended Agreement; thus, under the FAA, he must take his dispute to arbitration. But Barnes opposes the Motion, arguing that he never agreed to arbitrate and that Defendants actually forged his initials at the bottom of the Arbitration Provisions. Furthermore, even if he did sign the Arbitration

---

[4] Application of the FAA also requires a transaction involving interstate commerce. *See* 9 U.S.C. § 1. Barnes does not dispute that the parties' transaction involved interstate commerce since he has brought a civil RICO claim. Defendants also point to the allegations in the FAC involving interstate commerce, including that Barnes made payments to Defendants "via checks and wire transfers from an office his company had in Ephraim, Utah" and the "wire transfers were processed through Citibank in New York." (FAC § 84.)

Provisions, Barnes argues that they are unenforceable because they are unconscionable and violate California Civil Procedure Code section 1298.

The Court addresses whether the parties agreed to arbitrate and each of Barnes' contract defenses below.[5] *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (holding that courts "should apply ordinary state-law principles that govern the formation of contracts" in assessing whether an arbitration clause is enforceable).

## A. Fraud in the Execution/Fraud in the Inducement

Barnes first argues that he never agreed to arbitrate any disputes arising out of his real estate deal with Defendants. Instead, Barnes contends that inclusion of the Arbitration Provisions in the Amended Agreement was the result of fraud. While his signature appears to be on the last page of the Arbitration Provisions, Barnes contends that the signature is a forgery. (Opp'n 8:14–10:24.) Barnes also argues that the Court cannot enforce the Arbitration Provisions because he was unaware that the Amended Agreement contained the Arbitration Provisions and was "deceived as to the nature and effect of his signature." (*Id.* at 10:19–24.) He claims that he would never have agreed to arbitration because he has never signed an arbitration clause outside of the employment context. (Barnes Decl. ¶¶ 20–22.)

The statutory language of the FAA does not permit courts to consider defenses of fraud with respect to the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) (holding that an arbitration provision is severable from the remainder of the

---

[5] Both parties have filed objections to declarations and exhibits submitted in support of and in opposition to the Motion. (*See* ECF Nos. 19, 22, 26.) To the extent the Court relies on portions of the declarations or exhibits that have been objected to, the Court **OVERRULES** those objections. The Court finds the evidence upon which it relies is relevant, within the declarants' personal knowledge, and not inadmissible hearsay.

contract for the purposes of the FAA). But courts, and not the arbitrator, must decide "the threshold issue of the *existence* of an agreement to arbitrate." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991). Accordingly, fraud in the execution of the contract as a whole and fraud in the inducement of the arbitration clause itself are issues to be resolved by the courts. *See id.* at 1139–42.

Here, Barnes contends that the Arbitration Provisions were fraudulently executed because his signature was forged on the last page of the Arbitration Provisions. (Barnes Decl. ¶ 21.) But the Court finds that Barnes misses the mark by focusing on the wrong document. Barnes does not dispute that he signed the Amended Agreement. (*Id.* ¶ 18.) Paragraph 5 of the Amended Agreement clearly states that "the Reference Proceeding referred to [in the Original Agreement] is hereby replaced by the Arbitration Provisions that are attached to this Amendment as Exhibit 'C'." (FAC Ex. U.) The Court finds no language in the Amended Agreement or in the attached Arbitration Provisions indicating that the Arbitration Provisions are unenforceable unless separately initialed by Barnes. (*See id.*) Instead, the Arbitration Provisions are incorporated by reference into the Amended Agreement. (*Id.*) Thus, the Court need not reach the issue of whether Barnes' initials on the last page of the Arbitration Provisions are forged because Barnes consented to arbitration by signing the Amended Agreement itself.

Moreover, while Barnes contends that he was unaware that the Amended Agreement included the Arbitration Provisions, the Court finds that his failure to read paragraph 5 of the Amended Agreement and the attached Arbitration Provisions is a result of his own negligence and does not amount to fraud. *See Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 423 (1996) ("[O]ne party's *unreasonable* reliance on the other's misrepresentations, resulting in a failure to read a written agreement before signing it, is an insufficient basis . . . for permitting that party to avoid an arbitration agreement contained in the contract."). Barnes argues

1 that the Arbitration Provisions were concealed from him until after he signed the
2 Amended Agreement. (*See* Opp'n 10:19–24.) But Paragraph 5 of the Amended
3 Agreement clearly and unambiguously references the Arbitration Provisions attached
4 as Exhibit "C". (FAC Ex. U.) Barnes should have asked to see Exhibit "C" before
5 signing the Amended Agreement if those provisions were not attached or provided to
6 him.

7 Barnes alleges several colorable facts in support of his fraud argument, none of
8 which excuse Barnes' apparent failure to read the arbitration clause in the Amended
9 Agreement. For example, Barnes claims that Defendants delayed fully executing the
10 Amended Agreement until August 30, 2010. (FAC ¶¶ 89, 147; Barnes Decl. ¶ 25.)
11 But the Court fails to see how the alleged delay affects the fact that Barnes agreed to
12 arbitration and that the Amended Agreement was ultimately executed by all the
13 parties. Barnes also alleges that he was mentally and physically exhausted at the time
14 the Amended Agreement was signed due to Defendants' conduct and his own
15 financial hardships. (Barnes Decl. ¶¶ 23–24.) Barnes claims that his "previous
16 interactions" with counsel for Defendants and counsel's "tactics of 'threatening to
17 walk away' from the deal" also made him hesitant to make or suggest changes to the
18 Amended Agreement. (*Id.* ¶ 17.) However, these allegations do not reasonably
19 excuse Barnes from reading and understanding the arbitration clause in the Amended
20 Agreement. Barnes is a sophisticated party, who admits that he was represented by
21 counsel at the time he signed the Amended Agreement.[6] (*See id.* ¶ 7.) Defendants
22 have also submitted email exchanges with Barnes' counsel regarding drafts and edits
23 to the Amended Agreement. (*See* Weiss Reply Decl. ¶ 3, Ex. 1.) Barnes himself is

---

[6] Barnes' counsel at the time—Bruce Fraser from Sidley Austin LLP—is no longer representing him because of an undisclosed conflict. (Barnes Sur-Reply Decl. ¶ 4.) Barnes claims that the specifics of the conflict were never explained to him, but he insinuates that his former counsel was somehow involved in the alleged fraud. (Sur-Reply 4:22–27.) Notwithstanding the Court's hearsay concerns with respect to Fraser dropping the representation because of a "conflict," the Court finds Barnes' insinuation entirely unsubstantiated. Moreover, while the Court permitted Barnes to file a Sur-Reply, it made clear that new arguments and new grounds for relief would not be considered.

also an attorney. (*See* Barnes Decl. ¶¶ 7, 22.) While Barnes denies expertise in real estate transactions and denies ever signing an arbitration clause outside of the employment context, his background suggests an understanding of the general effect of an arbitration clause in a contract. (*See id.*)

Overall, the Court gives little weight to Barnes' general contention that Defendants deceived him into agreeing to arbitrate. Barnes has submitted no specific evidence of Defendants affirmatively misrepresenting the existence of an arbitration clause in the Amended Agreement. Even if Defendants concealed the attached Arbitration Provisions from Barnes, Barnes cannot explain his failure to read Paragraph 5 in the Amended Agreement itself. Barnes' allegations, whether adequately supported by the evidence or not, do not equate to fraud in the execution of the Amended Agreement or fraud in the inducement of the arbitration clause. *See Rosenthal*, 14 Cal. 4th at 415 (defining fraud in the execution and fraud in the inducement of a contract under California law).

**B.     Unconscionability**

Barnes also argues that, even if he agreed to arbitrate, the Arbitration Provisions are unconscionable and thus unenforceable. (Opp'n 10:27–17:23.)

> Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable. Courts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' Still, 'both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.

*Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000)) *overruled on other grounds by Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 933–34 (9th Cir. 2013).

Here, the Court finds that neither procedural nor substantive unconscionability is present with respect to the Arbitration Provisions.

### 1. Procedural Unconscionability

Courts consider two factors when looking at whether a contract term is procedurally unconscionable: oppression and unfair surprise. *Armendariz,* 24 Cal. 4th at 114 (citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)). "The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999). Unfair surprise is "a function of the disappointed reasonable expectations of the weaker party." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003).

Barnes argues that unfair surprise exists because he never signed the Arbitration Provisions and he lacks expertise in "complex real estate transactions or real estate law." (Opp'n 11:23–12:8; Barnes Decl. ¶ 7.) According to Barnes, he only expected his option payments to increase when he signed the Amended Agreement and it was unreasonable for him to expect mandatory arbitration provisions since they were not in the Original Agreement. (Opp'n 11:23–12:8; Barnes Decl. ¶¶ 16–19.) Barnes also argues that oppression abounds because of the economic conditions at the time he signed the Amended Agreement. (Barnes Decl. ¶ 15.) In addition, he had already sunk millions of dollars into the property, was worried about losing his investment, felt pressured to sign the Amended Agreement on a "take or leave it" basis, and relied on Defendants' statements that he would not qualify for a traditional mortgage. (*Id.* ¶¶ 10, 13, 15–19.)

But the Court finds that Barnes' arguments once again focus on the wrong document. Barnes admits to signing the Amended Agreement, which is only two pages long and includes clear language about arbitration in Paragraph 5. (Barnes Decl. ¶ 18; FAC Ex. U.) Moreover, Barnes is a lawyer and businessman who had

counsel representing him at the time he signed the Amended Agreement. (*See* Barnes Decl. ¶ 7.) Barnes' contention that he was surprised that the mandatory arbitration provisions were included in the Amended Agreement is simply unreasonable. Barnes' background and the fact that he had counsel to negotiate the Amended Agreement also contradict his oppression arguments. While Barnes is correct that "generalizations are always subject to exceptions and categorization is rarely an adequate substitute for analysis," this case is not an exception to the general rule that surprise and oppression are not present between sophisticated contracting parties. *A & M Produce*, 135 Cal. App. 3d at 489 ("[A] businessman usually has a more difficult time establishing procedural unconscionability in the sense of either 'unfair surprise' or 'unequal bargaining power.'").

In addition, Defendants have submitted evidence in the form of email exchanges between counsel for Barnes and Defendants, in which counsel discuss drafts of the Amended Agreement. (Weiss Reply Decl. ¶ 3, Ex. 1.) The evidence contradicts Barnes' Declaration that he did not actively participate in the drafting of the Amended Agreement. Defendants also point out that Barnes agreed to alternative dispute resolution in the Original Agreement, which bound the parties first to a judicial reference proceeding and called for binding arbitration as an alternative if judicial reference was unavailable. (FAC Ex. O, pp. 356 ¶ 15.4, 392 ¶ 15.4.) Since Barnes does not dispute the validity of the Original Agreement, the Court finds Barnes' assertion that he has never agreed to arbitration outside of the employment context simply untrue.

Lastly, Barnes argues that procedural unconscionability exists because he was not provided the "arbitration rules" when he signed the Amended Agreement. (Opp'n 14:7–16.); *see Trivedi v. Curexco Tech. Corp.*, 189 Cal. App. 4th 387, 393 (2010) (holding that the failure of an employer to provide a copy of the arbitration rules to an employee bound by the rules supports a finding of procedural unconscionability). To the extent that Barnes is claiming that he was not provided the

Arbitration Provisions when he signed the Amended Agreement, the Court has already discussed at length that his failure to read and inquire about the Arbitration Provisions cannot be excused.

If Barnes is arguing that he was not provided the rules of the arbitral forum, the Court finds that the case law cited by Barnes is distinguishable. In *Trivedi*, the court was dealing with an arbitration clause in an employment agreement where the employee clearly held unequal bargaining power. 189 Cal. App. 4th at 393. The employer drafted the agreement and selected the arbitral forum, and the employee was forced to go to an outside source to learn the ramifications of the arbitration agreement. *See id*. Here, Barnes is not only a more sophisticated party, but the arbitration rules are clearly laid out in the Arbitration Provisions and only specify that arbitration is to be conducted in accordance with the California Arbitration Act ("CAA"), specifically California Civil Procedure Code sections 1280 through 1294.2, "as amended from time to time." (FAC Ex. U, p. 500 ¶ 1.) Barnes, a lawyer, need only look up the statute to know the rules that he is bound by.[7] Also, under the terms of the Arbitration Provisions, the arbitrator is to be selected by mutual agreement, so Barnes is not entirely powerless in the proceeding. (*Id.* at p. 500 ¶ 2.)

For the reasons discussed above, the Court finds that Barnes has failed to demonstrate that the arbitration clause in the Amended Agreement is procedurally unconscionable.

/ / /

---

[7] Barnes also takes issue with the language "as amended from time to time" in the Arbitration Provisions. According to Barnes, the language supports a finding of procedural unconscionability because it is not clear whether the CAA as written at the time of contracting or the CAA as it stands now applies. *See Harper*, 113 Cal. App. 4th at 1407 (finding procedural unconscionability where it was not clear whether the arbitration rules in existence at the time of contracting or at the time of arbitration would apply). But the Court finds the language "as amended from time to time" in the Arbitration Provisions to be perfectly clear—the specified sections that are in effect the date of arbitration apply. There is no ambiguity. The parties even addressed the issue of a future conflict between the CAA and the Arbitration Provisions, explicitly stating that the Arbitration Provisions control. (FAC Ex. U, p. 500 ¶ 1.)

## 2. Substantive Unconscionability

While both procedural and substantive unconscionability must be present and the Court has already found procedural unconscionability lacking, the Court briefly addresses Barnes' arguments with respect to substantive unconscionability.

Substantive unconscionability "focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results as to 'shock the conscience.'" *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 808 (2006) (quoting *A & M Produce*, 135 Cal. App. 3d at 486). Here, Barnes argues that the Amended Agreement is an unenforceable "adhesion contract" because it was imposed on him by Defendants who drafted the agreement and he had no opportunity to negotiate its terms. (Opp'n 15:4–28.) But the Court has already addressed this issue above with respect to procedural unconscionability. Defendants have proffered evidence showing that Barnes' counsel actively participated in negotiating the terms of the Amended Agreement. (Weiss Reply Decl. ¶ 3, Ex. 1.) Barnes' argument also focuses too much on the overall terms of the Amended Agreement instead of the inquiry relevant to this Motion, which are the terms of the Arbitration Provisions only. *See Buckeye Check Cashing*, 546 U.S. at 445–46 (holding that an arbitration provision is severable from the remainder of the contract for the purposes of the FAA).

Barnes also contends that the cost of arbitration makes the provisions unconscionable. (Opp'n 16:1–17:23.) Barnes even estimates the arbitration fees based on his alleged damages of more than $25 million. (*Id.* at 16:11–17:14.) Yet Barnes fails to explain how his estimated arbitration fees deviate from acceptable standards or what makes the arbitration fees in this case unusual or particularly onerous. Since unconscionability is assessed at the time of contracting, Barnes also argues that he "may have been unable to pay the costs" at the time the Amended Agreement was executed because he was financially strapped. (*Id.* at 17:15–23.) This argument is speculative at best and is hardly sufficient to render the Arbitration Provisions unenforceable.

The Court therefore finds substantive unconscionability lacking with respect to Paragraph 5 of the Amended Agreement and the Arbitration Provisions.

**C.      California Civil Procedure Code § 1298**

Barnes' last argument against enforcement of the Arbitration Provisions in the Amended Agreement is that they do not comply with California Civil Procedure Code section 1298. (Opp'n 17:26–20:1.) In California, special requirements for binding arbitration agreements apply in the context of real estate transactions. *See* Cal. Civ. Proc. Code § 1298. For example, the arbitration provisions must be clearly titled "ARBITRATION OF DISPUTES" and the parties must initial or sign the arbitration provisions. *Id.*

But the Court finds that Barnes' section 1298 argument fails because the statute is preempted by the FAA. The FAA's savings clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility*, 131 S. Ct. at 1746 (internal quotations and citations omitted); *see also Hedges v. Carrigan*, 117 Cal. App. 4th 578, 583–84 (2004) ("A court may not invalidate an agreement to arbitrate under state laws that are only applicable to arbitration clauses."). Since California Civil Procedure Code section 1298 applies specifically to arbitration provisions in real estate contracts, it is preempted by the FAA.

Barnes contends that section 1298 is not preempted by the FAA in this case because the Arbitration Provisions reference only California law and contracting parties are free to decide the governing law. *See Volt*, 489 U.S. at 479. However, the Arbitration Provisions are more specific with respect to governing law than Barnes characterizes. The Arbitration Provisions state only that California Civil Procedure Code sections 1280 through 1294.2 apply. (FAC Ex. U, p. 500 ¶ 1.) The parties never contracted for section 1298 to apply. Furthermore, Barnes misinterprets the Supreme Court's holding in *Volt*. In *Volt*, the court held that parties are free to agree

that arbitration will be conducted in accordance with state procedural law, not that state statutes like section 1298 that purport to govern the right to arbitrate will withstand FAA preemption. *See id.* at 478–79.

Accordingly, the Court finds that California Civil Procedure Code section 1298 does not preclude enforcement of the Arbitration Provisions.

## V. CONCLUSION

For the reasons discussed above, the Court finds that a valid agreement to arbitrate exists. There is also no real dispute that Barnes' claims in this action fall within the scope of the Amended Agreement, which includes the Arbitration Provisions. *See* Cox, 533 F.3d at 1119 (limiting a court's determination to "(1) whether a valid arbitration agreement exists and, if does (2) whether the agreement encompasses the dispute at issue"). The Court, therefore, **GRANTS** Defendants' Motion to Compel Arbitration and **STAYS** this action pending arbitration. (ECF No. 13.) All dates are **VACATED** and taken off calendar. The parties shall notify the Court of the status of Barnes' claims within **7 days** of the conclusion of arbitration proceedings.

**IT IS SO ORDERED.**

October 1, 2014

_____
          **OTIS D. WRIGHT, II**
      **UNITED STATES DISTRICT JUDGE**